UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SHANNON NEALEY,**

      **Plaintiff,**

-v-                                                Case No.: 2:18-cv-1759
                                                    JUDGE SARAH D. MORRISON
                                                    Magistrate Judge Vascura

**HERITAGE OAKS MANAGEMENT
ENTERPRISES USA, LLC,** *et al.***,**

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendant Heritage Oaks Management Enterprises USA, LLC's ("Heritage Oaks" or "Defendant") Motion to Compel Arbitration (ECF No. 38). Plaintiff has responded in opposition (ECF No. 49) and Defendant has replied (ECF No. 57). This Motion is fully briefed and ripe for review. For the reasons that follow, Defendant's Motion is **GRANTED**.

        **I.**        **BACKGROUND**

Plaintiff Shannon Nealey ("Plaintiff" or "Nealey") is a former employee of former Defendant GNC Hilliard, LLC ("GNC"). [1,2] Nealey was employed by GNC as a resident aide at Carriage Court of Hilliard Assisted Living ("Carriage Court") from December 15, 2015, until her termination on June 6, 2016. (ECF No. 32, Am. Compl. ¶¶ 28–29). On May 1, 2016, Heritage

---

[1] Pursuant to the Plaintiff's Motion for Joinder of Defendants (ECF No. 21) and Plaintiff's Amended Complaint (ECF No. 32), Defendant GNC sold Carriage Court to Heritage Oaks Management USA, LLC and/or Sentio Healthcare Properties, Inc. on or about April 1, 2016. (ECF No. 21 at 3). Plaintiff did not experience any interruption in her employment status when control of Carriage Court was transferred to Heritage Oaks and Sentio. (ECF No. 32, Am. Compl. ¶ 14).

[2] Plaintiff voluntarily dismissed her claims against GNC on March 16, 2020. (ECF No. 55).

Oaks, as Worksite Employer, and Oasis Outsourcing, as the Professional Employer Organization, began managing Carriage Court.  (ECF No. 38-1, Rountree Aff. ¶ 4).  Prior to this transition, Oasis Outsourcing and Heritage Oaks met with each Carriage Court employee to review the onboarding process to transfer each employee to the new management.  (*Id*. at ¶ 5).  Each employee was required to complete new hire paperwork and sign an agreement titled "Employee Acknowledgements."  (*Id*. at ¶ 7).  The Employee Acknowledgements included the following binding arbitration provision:

> I and Oasis agree that any legal disputes with my Worksite Employer, Oasis, or any other party that may have an employment relationship with me arising out of or in connection with my employment, application for employment, or separation from employment for which I am, was, or would be paid through Oasis will be resolved exclusively through binding arbitration by a neutral arbitrator as provided in this agreement and, to the extent not inconsistent with this agreement, under the rules of a neutral arbitration service. The arbitrator will have the authority to grant the same remedies as a federal court (but no more), will apply the Federal Rules of Evidence and any applicable statutes of limitation, will render a reasoned, written decision based only on the evidence adduced and the law, and can grant attorney fees and costs to the prevailing party subject to applicable law.

(ECF No. 38-1, Ex. A-1).

On March 7, 2016, Nealey executed the Employee Acknowledgements, wherein she agreed to submit all employment-related disputes to arbitration.  (*Id*.).  Plaintiff maintains that she never signed or executed the Employment Agreement attached to Defendant's motion.  (ECF No. 49, Pl.'s Resp. at 2).  Nealey's handwriting does not appear on the Employment Agreement.  Instead, the single page contains the typed name "SHANNON NEALEY (e-sign I agree)."  (ECF No. 38-1, Ex. A-1).

Plaintiff initiated this case on December 20, 2018.  (ECF No. 1).  On November 1, 2019, Plaintiff filed a five-count Second Amended Complaint alleging claims of: disability discrimination, wrongful termination, failure to accommodate, and retaliation against Defendants

2

Heritage Oaks, Sentio Healthcare Properties, Inc, Terri Trip, and former Defendant GNC. (ECF No. 32, 2d Am. Compl.). Defendant Heritage Oaks moves to compel arbitration.

## II. STANDARD OF REVIEW

Defendant Heritage Oaks moves to compel arbitration and to dismiss all claims against them. Under the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), a written agreement to arbitrate disputes arising out of a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a party who signed an arbitration contract fails or refuses to arbitrate, the aggrieved party may petition the court for an order directing the parties to proceed in arbitration in accordance with the terms of the agreement. 9 U.S.C. § 4. The Court must then "determine whether the parties agreed to arbitrate the dispute at issue." *Ackison Surveying, LLC v. Focus Fiber Sols., LLC*, No. 2:15-CV-2044, 2016 WL 4208145, at *1 (S.D. Ohio Aug. 10, 2016) (Marbley, J.) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Id.*; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)*; see also Nestle Waters N. A., Inc. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007) ("[W]e examine arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration."). However, "[w]hile ambiguities . . . should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (internal citation omitted).

In evaluating motions to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn

3

therefrom in light most favorable to the non-moving party." *Jones v. U-Haul Co. of Mass. & Ohio Inc.*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014) (Graham, J.). The Court has four tasks:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout*, 228 F.3d at 714.

The requirements set forth in the FAA were "designed to override judicial reluctance to enforce arbitration provisions, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Id*. "When an agreement to arbitrate encompasses claims asserted in court, dismissal is appropriate under Fed. Rule Civ. P. 12(b)(1) for lack of subject matter jurisdiction . . . ." *Deck v. Miami Jacobs Bus. College Co.*, No. 3:12-cv-63, 2013 WL 394875, at *7 (S.D. Ohio Jan. 31, 2013) (Black, J).

### III. DISCUSSION

Defendant Heritage Oaks argues that Plaintiff must pursue her claims in arbitration because she signed an agreement on March 7, 2016 titled "Employee Acknowledgements", which includes an agreement to arbitrate all claims. In response, Plaintiff argues that she never signed the Employee Acknowledgements and that, prior to this litigation, she had never seen the document and, thus, there is no valid arbitration agreement. Therefore, the Court must first determine whether the parties have a binding agreement to arbitrate and then, if necessary, determine if this matter is arbitrable.

### A.    Valid Agreement to Arbitrate

The threshold matter courts must consider is whether there is a valid agreement to arbitrate between the parties. *Masco Corp. v. Zurich Am. Ins. Co.,* 382 F.3d 624, 627 (6th Cir. 2004).

Plaintiff opposes arbitration of this matter because she claims she "never signed the Employee Acknowledgement. Her handwriting does not appear on the document at all, and rather, the document contains an electronic signature." And she argues that "[t]he electronic markings on the Employee Acknowledgement were not executed by Nealey." (ECF No. 49, Pl.'s Resp. at 1).

Defendant asserts that Plaintiff electronically signed the Employee Acknowledgements on March 7, 2016, that contains the following binding arbitration agreement:

> I and Oasis agree that any legal disputes with my Worksite Employer, Oasis, or any other party that may have an employment relationship with me arising out of or in connection with my employment, application for employment, or separation from employment for which I am, was, or would be paid through Oasis will be resolved exclusively through binding arbitration . . .

(ECF No. 38-1, Ex. A-1). Defendant submits the Declaration of Misty Rountree, Human Resources Manager for Heritage Oaks to establish that Plaintiff was required to, and did in fact, complete all the new employee paperwork, including signing the Employee Acknowledgements. (ECF No. 57-1, Rountree Decl. ¶ 13). Specifically, "each Carriage Court employee was required to provide the employee's Social Security Number, phone number and birth date to proceed to complete new hire paperwork" and "was required to complete the new hire paperwork online, including executing an agreement entitled "Employee Acknowledgements." (*Id*. ¶¶ 9–10). All of this was required before any Carriage Court employee would receive a paycheck. (*Id*.). Plaintiff, on the other hand, provides only her own self-serving statement to assert that she "never saw the Employment Acknowledgment" and "never signed the Employee Acknowledgment." (ECF No. 49-1, Nealey Aff. ¶¶ 4–5).

Plaintiff's self-serving statements in her Affidavit are insufficient to raise a question of material fact regarding the validity of the arbitration agreement. *See Hooks v. Saxon Mortg., Inc.*, No. 1:05-cv-2651, 2006 U.S. Dist. LEXIS 109024, at *20–21 (N.D. Ohio June 20, 2006) (holding

5

that naked assertions and self-serving affidavits are insufficient to raise a genuine issue of fact regarding the validity of an agreement to arbitrate). Further, electronic signatures are binding under Ohio law. *See* Ohio Rev. Code § 1306.06 ("A record or signature may not be denied legal effect or enforceability solely because it is in electronic form . . . A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation."). Finally, Nealy's continued employment with Heritage Oaks evidences her assent to the Arbitration Agreement. Assent to a contract can be manifested through continued employment. *See Dantz v. Am. Apple Grp., LLC*, 123 F. App'x 702, 708 (6th Cir. 2005) ("Mutual assent is manifested by Dantz's continued employment after having been told explicitly that the arbitration agreement was a condition of her employment."); *Porter v. MC Equities, LLC*, No. 1:12-cv-1186, 2012 U.S. Dist. LEXIS 123621, 2012 WL 3778973, at *6 (N.D. Ohio Aug. 30, 2012) ("an employee's continued employment with her employer alone is sufficient consideration for an arbitration agreement under Ohio law").

Additionally, the *Jones* case involved a factually similar matter where a plaintiff claimed she had no recollection of signing, electronically or otherwise, an arbitration agreement or employment dispute resolution policy. *Jones*, 16 F. Supp. 3d at 934. The *Jones* defendant provided an affidavit describing the process all employees followed to access and sign the arbitration agreement, including that employees accessed the company's electronic human resources document processing website, entered the employee's social security number or system member identification number, and entered a confidential, self-selected password to access the system. *Id*. Based on the lack of evidence from the plaintiff and the affidavit submitted by the defendant, the court found the plaintiff's electronic signature on the defendant's arbitration agreement was authentic, valid, and binding. *Id*.

6

Like the plaintiff in *Jones*, Nealey was required to input her social security number and additional personal information to confirm her identification and access the arbitration agreement.[3] *Jones*, 16 F.Supp.3d at 934. As such, the Declaration provides sufficient evidence that Nealey indeed signed the Arbitration Agreement and the authenticity of her signature.

In light of the evidence submitted by Defendant and the lack of evidence submitted by Plaintiff, other than a self-serving affidavit, the Court finds that Plaintiff's electronic signature on the Employee Acknowledgements is valid and binding. Additionally, by continuing her employment with Heritage Oaks, Plaintiff's conduct was sufficient to bind her to the terms of the Employee Acknowledgements. The Court does not find any need to allow discovery to determine the authenticity of the Employment Acknowledgement as requested by Plaintiff.

**B.     Arbitrability**

Where the parties have executed a contract containing a binding arbitration agreement, as determined above, there is a presumption that any dispute between them is arbitrable. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25. Therefore, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

---

[3] The Rountree Declaration establishes that Nealey was required to access the onboarding website, enter a unique Oasis Client ID and Employer PIN number for Carriage Court, and enter the employee's Social Security number, phone number, and birth date to access their new hire paperwork. (ECF No. 57-1, Rountree Decl. ¶¶ 7–9).

Beyond arguing that she did not sign the Employee Acknowledgements, Plaintiff does not challenge the actual terms of the arbitration agreement, nor that her claims are subject to arbitration.  Here, the Arbitration Agreement covers "any legal dispute with [Heritage Oaks] . . . arising out of or in connection with my employment, application for employment, or separation from employment for which I am, was, or would be paid through Oasis."  (ECF No. 38-1, Ex. A-1).  Based on this language, the Court finds that Plaintiff's ADA and related state-law claims fall squarely within the scope of the Arbitration Agreement.

**C.     Dismiss or Stay Plaintiff's Claims**

Having found that all of Plaintiff's claims in this case must be submitted to arbitration, the Court must determine whether to dismiss the Second Amended Complaint or stay this matter pending arbitration.  The FAA directs the Court to stay an action pending arbitration.  Section 3 of the FAA expressly provides that, where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court shall stay the action "until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  However, the Court also has the ability to dismiss a case when all issues raised in the complaint are arbitrable.  *See, e.g.*, *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc*., 252 F.3d 707, 709–10 (4th Cir. 2001) (concluding "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable") (citation omitted); *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); *Gassner v. Jay Wolfe Toyota*, No. 4:06-CV-1335, 2007 WL 1452240, at *4 (E.D. Mo. May 15, 2007) ("Where all issues in a case must be submitted to arbitration, it serves no purpose to retain jurisdiction and stay an action.").  Based on the foregoing caselaw, the

Court concludes that dismissal of the Second Amended Complaint is the appropriate remedy because all of Plaintiff's claims are arbitrable. The Court can discern no purpose for retaining jurisdiction and staying the action.

### IV. CONCLUSION

Based on the foregoing, Defendant Heritage Oaks' Motion to Compel Arbitration is **GRANTED**.

Plaintiff's Motion for Default Judgment (ECF No. 20) and the Report and Recommendation (ECF No. 51) are **DENIED AS MOOT**.

The Clerk shall remove ECF Nos. 20, 38, and 51 from the Court's pending motions list. This matter shall be closed.

**IT IS SO ORDERED.**

　　5/15/2020　　　　　　　　　　　　　　　　/s/ Sarah D. Morrison
**DATE**　　　　　　　　　　　　　　　　　**SARAH D. MORRISON**
　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**